## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SCHINDLER ELEVATOR CORPORATION,** ) | |
| **A New Jersey Corporation,** ) | |
| **6800 Muirkirk Road** ) | |
| **Beltsville, Maryland 20705** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: _____** |
| ) | |
| **WASHINGTON METROPOLITAN** ) | |
| **AREA TRANSIT AUTHORITY ("WMATA"),** ) | |
| **An interstate agency created by Compact,** ) | |
| ) | |
| **SERVE:      Patricia Lee, Esquire** ) | |
| **WMATA** ) | |
| **General Counsel** ) | |
| **600 5th Street, N.W.** ) | |
| **Washington, D.C. 20001** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## VERIFIED COMPLAINT

Plaintiff, Schindler Elevator Corporation ("Schindler"), by and through undersigned counsel, and for its Verified Complaint ("Complaint") against Washington Metropolitan Area Transit Authority ("WMATA" or the "Authority") for declaratory judgment, specific performance, temporary restraining order, preliminary and permanent injunction, violation of agency Compact, violation of agency Procurement Procedures Manual and Solicitation requirements, violation of other applicable law, damages, and other relief, states as follows:

## INTRODUCTION

1.      This is an action appealing the denial of Schindler's Pre-Award Protest and Supplemental Protest (collectively, the "Protests") regarding a procurement for construction services to, among other things, remove, replace and install multiple escalators throughout the

1

WMATA metro rail and transit station system in and around Washington, D.C. (hereinafter the "Project").

2.     Schindler also seeks a preliminary and permanent injunction, staying the procurement award to Kone, Inc. ("Kone") and its performance of the contract for the Project.

3.     In support of the factual allegations stated herein, Schindler hereby attaches and incorporates by reference the Affidavit of Gregory Kenderdine as Exhibit 1 hereto.[1]

## PARTIES

4.     Schindler is a corporation organized and existing under the laws of the state of Delaware with a regional place of business at 6800 Muirkirk Road, Beltsville, Maryland 20705.

5.     At all times relevant, Schindler has been registered and authorized to transact business in the District of Columbia.

6.     WMATA was created by an interstate Compact among Virginia, Maryland, and the District of Columbia to construct and operate a transit system, consisting of buses and subways, for the Washington, D.C. Metropolitan Area. Md. Code, Transp. Art. § 10-204 *et seq.* (West 2020); Va. Code §§ 33.2-3100 *et seq.* (West 2020); D.C. Code § 9-1107.01 *et seq.* (West 2020).

---

[1] As a result of the Court's October 28, 2020 Order denying Plaintiff, Schindler Elevator Corporation's, Motion to Seal, and for purposes of initially filing the Verified Complaint and Memorandum of Points and Authorities in Support of its Motion for Temporary Restraining Order and Preliminary Injunction while also protecting against the public disclosure of trade secret and competition sensitive information in this appeal of bid protest denial, certain facts and exhibits have been temporarily redacted in whole or in part. Those items contain confidential, proprietary and trade secret information unique to Schindler's business, including but not limited to pricing, strategy, organizational approach, technical plans, internal policies, and other information not in the public realm. Towards this end, Schindler has filed contemporaneously herewith a Motion for Protective Order. Upon consultation with the Court, the Defendant and entry of a Protective Order, Schindler will file and serve unredacted, protected versions of these documents.  Plaintiff does note that the Defendant already has in its possession the full original versions of all of these documents and exhibits, and will not be prejudiced in any way by the filing of these redacted versions.

7.      WMATA has the power to sue and be sued, D.C. Code Ann. § 9-1107.01, Sec.

12(a), and has waived sovereign immunity with respect to the subject matter of this suit. *Id.* at §

9-1107.01, Sec. 80. *See* WMATA Compact, attached hereto as Exhibit 2.

8.      Among other things, the Compact requires WMATA to obtain full and open

competition through the use of competitive procedures and use the competitive procedure or

combination of competitive procedures that is best suited under the circumstances when

conducting a procurement for services or construction. D.C. Code § 9-1107.1, Sec. 73(a)(1);

Exhibit 2, Sec. 73.

9.      The Compact requires that WMATA establish policies and procedures relating to

its contracting and procurement practices. D.C. Code Ann. § 9-1107.01, Sec. 73(g) ("The Board

shall adopt policies and procedures to implement this section.").

10.     Towards this end, WMATA has promulgated its Procurement Procedures Manual

("PPM") that purports to govern procurements by competitive proposals, such as the

procurement and Protest at issue in this case. *See* Procurement Procedures Manual, at § 10-1 *et

seq.*, attached hereto as Exhibit 3.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to D.C. Code. Ann. §§ 9-

1107.01, Secs. 81 & 1107.10.

12.     WMATA's Compact states, in part, that "[t]he United States District Courts shall

have original jurisdiction, concurrent with the Courts of Maryland, Virginia and the District of

Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued

under this Title." *See* Exhibit 2, WMATA Compact, Sec. 81; *see also* Pub. L. No. 89-774, 80

Stat. 1324 (1966); Md. Code, Transp. § 10-204; Va. Code § 33.2-3100; D.C. Code § 9-1107.01.

13.     Pursuant to WMATA's Request for Proposal ("RFP" or "Solicitation") involving the procurement at issue, the judicial authorities having jurisdiction over court actions concerning protest decisions are the United States District Courts for the District of Columbia, State of Maryland and Commonwealth of Virginia, and the local courts in the District of Columbia, State of Maryland, and the Commonwealth of Virginia. *See* RFP Div. 00, Section 00 20 01(T)(5), attached hereto, in relevant part, as Exhibit 4.

14.     Venue is appropriate in this judicial district.

15.     Furthermore, venue is proper because a substantial part of the acts, events and omissions giving rise to Schindler's claims occurred in the District of Columbia, and the Project and procurement at issue in this lawsuit is located in the District of Columbia.

## FACTUAL BACKGROUND

### *Schindler*

16.     Schindler was founded in 1874 in Lucerne, Switzerland, and is one of the leading global manufacturers and service providers of elevators, escalators and moving walks.

17.     Schindler manufactures, installs, maintains and modernizes mobility solutions for almost every type of building requirement worldwide. In its 140+-year history, Schindler has grown from a local manufacturer of machines into a global elevator and escalator business. With over 6,000 people in more than 160 locations in North America, it has shaped the industry, defined best practice as a mobility provider and as an employer, and prospered in a highly competitive global environment. Schindler products can be found in many well-known buildings throughout North America, including office buildings, airports, shopping centers/retail establishments and specialty buildings.

18.     Schindler also has a deep and long-term relationship with WMATA. Schindler has installed and maintained escalators on a number of WMATA stations, including the Silver Line Phase II as well as performed other modernizations. The following contracts are some examples of Schindler's recent contract experience with WMATA:

      a.   WMATA Contract FP7010 – Modernization of 70 escalators;

      b.   WMATA Redline Contract FQ8143 – Furnished and installed five (5) new escalators at Dupont Circle South Station and Foggy Bottom Station;

      c.   WMATA Orange Blue Line Contract FQ9206 – Modernization of 100 escalators and installation of three (3) new escalators at the Pentagon Station; and

      d.   WMATA Dulles Corridor Metro Rail Phase 2 Contract 113263 (Silver Line) – Furnished and installed twenty-eight (28) new escalators.

19.     In addition to the NI and modernization contracts listed above, Schindler maintained the entire system for WMATA for many years and developed a very good working relationship with WMATA management. The service contracts were discontinued when WMATA decided to self-maintain its vertical transportation equipment. A great deal of the modernization scope of work specified by WMATA today was developed and engineered by Schindler locally in conjunction with WMATA's Transit District Office while working with WMATA on these various contracts.

### *The Solicitation*

20.     On January 30, 2020, the Authority approved the release of the Solicitation for prospective bidders.

21.     The Solicitation sought proposals to furnish new escalators in the existing wellways at various stations within the WMATA Metro Rail System, including in general, the removal, manufacture and installation (as well as provision and installation of other appurtenant equipment and components) for those new escalators, as described more fully in the WMATA-provided Specifications. *See* Exhibit 4, RFP, Vol. 01, Sec. 00 10 12, at p. 12 (Volume 1 of 5). The specifications describe the work for each aspect of the installation. *Id*.

22.     Pursuant to the Solicitation, the Authority intended to award a fixed price contract to an offeror who provided the best value, *i.e*., an offeror whose proposal was "judged by an integrated assessment of the evaluation criteria to be the most advantageous to the Authority based on technical merit and price as identified in Section 00 20 01," and "that the Authority deems responsible in accordance with the WMATA Procurement Procedures Manual." *Id*.

23.     Negotiated RFP procurements such as this one further the requirement that public procurements, such as those funded by public funds (including those funds provided by the Federal Transit Administration ("FTA") and the three local jurisdictions making-up WMATA), have full and open competitions carried out on a "level playing field," resulting in a true fair and equal competition, which thereby benefits the Agency (and in turn the public) who gets the best overall value for the taxpayer's and ridership's benefit.

24.     Between February 20, 2020 and April 20, 2020 the Authority issued seven (7) amendments to the Solicitation as follows:

> a.   On February 20, 2020, the Authority issued Amendment No. 1, in which it provided As-Built drawings for certain of the Metro Stations listed in the RFP. See RFP Amendment No. 1.

> b.   On February 21, 2020, the Authority issued Amendment No. 2, in which it changed the due date for all Requests for Information (RFI) to on or before 2:00 pm, February 27, 2020. See RFP Amendment No. 2.

    c.  On March 3, 2020, the Authority issued Amendment No. 3, providing additional opportunities for site visits for surveys. See RFP, Amendment No. 3.

    d.  On March 11, 2020, the Authority issued Amendment No. 4, providing a number of revisions to the Price Schedule, Specification 14 31 00, and Responses to RFIs with Additional Drawings and Attachments. See RFP, Amendment No. 4.

    e.  On March 17, 2020, the Authority issued Amendment No. 5, changing the due date for the submission of Technical Proposals and Price Proposals to on or before 2:00 pm, April 22, 2020, and providing additional drawings for the Brookland Metro Station. See RFP, Amendment No. 5.

    f.  On April 8, 2020, the Authority issued Amendment No. 6, again changing the due date for the submission of Technical Proposals and Price Proposals to on or before 2:00 pm, April 29, 2020, clarifying that proposals must be submitted electronically, and clarifying information to be included with the Proposal Guarantee. See RFP, Amendment No. 6.

    g.  Lastly, on April 20, 2020, the Authority issued Amendment No. 7, again changing the due date for the submission of Technical Proposals and Price Proposals to on or before 2:00 pm, May 6, 2020. See RFP, Amendment No. 7.

*See* Exhibit 4.

25.    The Solicitation, as amended, provided proposal instructions to offerors at Volume 01, Section 00 20 00 of the Specifications.

26.    Among other things, the Solicitation stated that the method of procurement would be a Best Value, single-phase, negotiated procurement that:

    a.  Requires the Proposer(s) to prepare and submit separately Technical and Price Proposals based on the scope of Work set forth in the Solicitation. See Section 01 11 10, SUMMARY OF WORK. The Technical and Price Proposals will be evaluated separately based on the Technical Evaluation Factors stated under Section 00 20 03, TECHNICAL AND PRICE PROPOSAL FORMAT, PROCEDURES AND EVALUATION FACTORS, AND INSTRUCTIONS, and the Price Evaluation Factors stated in the same section.

    b.  Upon completion of the evaluation of the Technical and Price Proposals, the Authority will select and notify Proposers who it determines submitted the most highly-rated Technical Proposals and whose Price Proposals were considered to be most advantageous to the Authority.

Exhibit 4, RFP, Vol. 1, Sec. 00 20 00 at p. 18.

27.     Although the Authority might require an oral presentation and Best and Final

Offers, the Authority could award a contract without Amendments, negotiations, or discussions.

*Id*. The Authority intended to make a single offer and award a fixed price contract to an offeror:

> a.   whose offer is judged by an integrated assessment of the evaluation criteria to
>       be the most advantageous to the Authority based on technical merit and price
>       as identified in Section 00 20 03, TECHNICAL AND PRICE PROPOSAL
>       FORMAT, PROCEDURES AND EVALUATION FACTORS, AND
>       INSTRUCTIONS, and
>
> b.   that the Authority deems responsible in accordance with the WMATA
>       Procurement Procedures Manual.

*Id*. at 18.

28.     The Authority reserved the right to conduct discussions with the offerors, and, if it

determined that discussions were necessary, identify those offerors the Authority deemed within

the competitive range or ripe for award consideration. *Id*.

29.     The Solicitation stated that each technical proposal would be reviewed and

evaluated individually by the Authority in accordance with its established procurement policy

and procedures – much of which is derived from federal and local state public procurement

precedent. *See* Exhibit 4, RFP, Vol. 1, Sec. 00 20 03 at 26.

30.     The Solicitation defined, among other things, the following for evaluation

purposes:

> Definitions:
>
> a. Discussions: Oral or written communications including negotiations
> between the Authority and an Offeror (other than clarifications) that involve
> information essential for determining the acceptability of the Proposal or to
> rectify identified defects in the Proposal.

b. Clarifications: Communication with an Offeror for the sole purpose of eliminating minor irregularities, informalities, or apparent clerical mistakes in the Proposal. Unlike discussions, clarification does not give the Proposer an opportunity to revise or modify its Proposal, except to the extent that correction of apparent clerical mistakes results in revision. All clarifications submitted by the Proposer must be in one location and in accordance with Section 00 43 40, PRICE PROPOSAL SCHEDULE

c. Deficiencies: Defects in the Proposal could preclude acceptance. Involves any part of the Proposer's Proposal, which would not satisfy the Authority's evaluation standards established in the Solicitation. Includes failures to meet specifications, submit information, or questionable technical or management approaches. Deficiencies identified during the evaluation of the Proposal will be of one of two categories:

> 1) Material: Material-basis for rejection because further discussions would not likely be correctable.

> 2) Curable: May be corrected by clarification or discussions and brought into the acceptable range.

d. Weakness: Includes ambiguities, lack of complete descriptions, errors in interpretation, omissions of essential information, and inadequate information, all of which are considered reparable in discussions. An excessive number of clarifications may in itself constitute a weakness.

e. Strengths: Elements of the Proposal that exceed the evaluation standards of the Solicitation and provide an identified benefit to the Authority.

*Id.* at 26-27.

31.     The Solicitation also provided that "[p]roposals will be evaluated by their strengths, weaknesses, and deficiencies against the evaluation factors and those attributes will be communicated to the proposers for follow-up action as appropriate." *See* Exhibit 4, RFP, Vol. 1, Sec. 00 20 03(A)(2) at p. 26.

32.     WMATA's failure to evaluate and identify the strengths and weaknesses of an offeror's technical proposal is unreasonable where the record shows that the evaluation deviated from the stated evaluation criteria.

33.    The Solicitation further provided that the technical merit of a proposal was more important than the price. Therefore, while the price must be fair and reasonable, WMATA could select and make an award to a proposal that was other than the lowest priced proposal, if it determined by a best value analysis, or technical/cost tradeoff, that a higher-priced proposal offered the best overall value to the Authority. *Id.* at 27.

34.    The Solicitation listed the technical proposal evaluation factors in the order of their relative importance, with some being equal weight where noted:

1. **Work Approach**: This factor considered the offeror's approach, staffing and means and methods of prosecuting the Work during design and construction and required the offeror to specifically address:

   a. Project understanding and approach,
   b. Schedule,
   c. Execution of the replacement work at each location,
   d. Replacement of the escalators at specific locations that may present challenges,
   e. Capability to perform the work as described in the Solicitation,
   f. Capacity to assume additional work, and
   g. A list of spare parts for the Tenleytown station.

2. **Past Performance, Experience and Qualifications**: This factor required the offeror to provide examples of:

   a. Experience of same or similar projects completed within the last 15 years specifically those within a transit environment (contract was with a transportation agency or projects were completed within a transportation system or facility) or with APTA standard equipment, and
   b. A narrative of major subcontractors and DBE subcontractors' experiences and past performance.

3. **Organization, Key Management and Project Personnel Qualification**: This factor required the offeror to:

   a. Provide a project organizational chart including a definition of the responsibilities shown therein,
   b. Provide narrative to demonstrate understanding of the management techniques required for proper implementation and control of the work,

      c. Identify who is responsible for project staffing, coordination with jurisdictional inspectors/authorities and others, integrating all aspects of the work, and

      d. Provide resume of key/principal staff members to be assigned to the WMATA project.

4.  **Safety Program**: This factor requested offerors to:

      a. Provide a copy of the corporate safety program,

      b. Provide the Insurance Experience Modification Rating for 2017, 2018 and 2019,

      c. Submit a copy of OSHA Forms 300 and 300A for 2017, 2018 and 2019,

      d. Provide the OSHA Recordable Incident Rates for 2017, 2018 and 2019, and,

      e. Provide the OSHA Lost Time Incident Rates 2017, 2018 and 2019.

5.  **Quality Assurance/Quality Control**: This factor requested offerors to:

      a. Provide a copy of and describe the Corporate Quality Manual (QM) and Quality Management System (QMS), including proposed technical design teams' QA / QC program, and a listing of recent projects on which it has been used,

      b. Explain how the plan addressed the implications and operations of the Quality Manual or Plan and its integration with the Quality Assurance Operations performed by the Authority,

      c. Indicate that their auditor conducting QA / QC reviews would be "Lead Auditor" trained,

      d. Provide a copy of the last five (5) years Management Reviews conducted on the Quality Management Systems implemented by the Offeror,

      e. Provide sufficient details to demonstrate their knowledge and understanding of the application of the concepts in ISO 9001, ISO 10005, or the FTA's fifteen (15) QA/QC guidelines, and

      f. Provide a copy of any training records related to quality for the proposed project team members.

*See* Exhibit 4, RFP, Vol. 1, Sec. 00 20 03, at 27-32.

### *Schindler's Proposal Submission*

35.     On May 6, 2020, Schindler timely submitted its proper, complete and fully responsive proposal to WMATA.

36.     As required, Schindler organized its proposal into two volumes, one for technical requirements and the other for price. Schindler addressed each technical proposal evaluation

factor in the order of their relative importance and in its entirety in Volume I of its proposal and provided all requisite information and pricing in Volume II. *See* Schindler's Proposal (Volumes 1 and 2), attached hereto as Exhibit 5.

### *The Request for "Clarification" Letter and Schindler's Response*

37.     On June 18, 2020, the Authority's Contracting Officer ("CO") sent Schindler a letter requesting that Schindler clarify certain information provided in its May 6, 2020 proposal and to provide additional documentation. *See* WMATA June 18, 2020 "Clarification" Letter, attached hereto as Exhibit 6.

38.     The Authority listed eighteen (18) questions and/or items for further explanation in its letter and requested that Schindler provide the information requested by 4:00 pm, June 22, 2020. *Id.*

39.     On Friday, June 19, 2020, WMATA extended the due date until 4:00 pm on Tuesday, June 23, 2020 via email. *See* WMATA's June 19, 2020 E-mail, attached hereto as Exhibit 7.

40.     Because some of the items seeking further explanation were, in fact, quite material, the June 18, 2020 letter and Schindler's response submission actually constituted formal "discussions" per PPM § 10-22 and Solicitation, Vol. 1, Sec. 00 20 03 at 26, even though WMATA labeled the letter as a "clarification" letter. *See* Exhibit 3, § 10-22; Exhibit 4, RFP, Vol. 1, Sec. 00 20 03 at 26.

41.     On June 23, 2020, Schindler e-mailed the Authority its responses to the Authority's Request for Clarification Letter in the form of a letter along with three separate emails which appended several detailed, substantive, exhibits responding to the questions or

providing corrective or elaborative pages. *See* Schindler's June 23, 2020 Response to WMATA

June 18, 2020 "Clarification" Letter, attached hereto as Exhibit 8.

42.      In its June 23, 2020 response, Schindler addressed all of the 18 requests for

information; included the additional requested information and asked the Authority to notify

Schindler if it required further comments or requests for clarification.

43.      No further questions, clarifications, communications or discussions were initiated

by WMATA or received by Schindler.

44.      WMATA's decision to not engage in any further communications or discussions

represented and established that Schindler had fully and adequately addressed the Authority's

inquiries.

### *The Notice of Disqualification and Request for Debriefing*

45.      On August 5, 2020, the Authority, through its Contract Manager, Judy-Ann

Davis, notified Schindler that she or WMATA had determined that Schindler's technical

proposal allegedly failed to conform to the requirements of the Solicitation and would not be

considered for award. *See* WMATA's August 5, 2020 Notice ("Notice"), attached hereto as

Exhibit 9.[2]

46.      The Authority's Notice provided no explanation, rationale, findings or

justifications for its determination. *Id.* Instead, it simply informed Schindler that it could contact

the Contract Administrator, Cindy Smith, via email within ten (10) calendar days of receipt of

the Notice to request a debriefing of its technical proposal. *Id*.

---

[2] Upon information and belief, Schindler understands that two of the other offerors, out of a total of four, including Schindler, were notified prior to Schindler's exclusion, that they too had been excluded from the competition, leaving only one offeror, Kone, in the competition.

47.     The Notice went on to state, however, that the debriefing would be limited to discussion of Schindler's technical proposal and "would focus on perceived weaknesses or deficiencies, and responses to evaluation criteria." *Id*.

48.     Moreover, that Notice stated that the overall score of Schindler's proposal or its ranking against other proposals would "not be discussed, nor any proprietary information submitted by other proposers." *Id*.

49.     On August 7, 2020, well within 10 calendar days of receipt of the Notice, Schindler timely submitted to the Contract Manager and the Contract Administrator a written request for a debriefing to occur in person (whether live or via videoconference) and asked that any written materials be provided prior to that debriefing. *See* Schindler's August 7, 2020 Request for Debriefing, attached hereto as Exhibit 10.

50.     In its Request for Debriefing, Schindler stated that it was at a loss as to how WMATA could have reasonably or properly determined that Schindler's "technical proposal fails to conform to the requirements of the Solicitation and will not be considered for award;" reiterated that it had provided a complete, technically detailed and competitive proposal; and that it had answered all clarification and discussion questions that it received from the Authority promptly and timely, inclusive of providing amended proposal pages and additional supporting materials. *Id*.

51.     Additionally, Schindler posed the following questions, among others, in accordance with WMATA PPM § 10-26(b):

> 1. Specifically, what alleged factors or elements of the RFP did Schindler purportedly not meet or conform to/with? For what reasons/basis, did you determine that such alleged deviations are material in nature and rose to the level of purported grounds for disqualification?

2. How was Schindler's June 23, 2020 response ("Response") to the June 19, 2020 WMATA questions/clarifications and discussion letter considered or reviewed and analyzed and integrated into the agency/TET's [Technical Evaluation Team's] consideration and analysis?

3. What concerns or problems remained after receipt of the Response?

4. Were the alleged nonconformities in Schindler's proposal raised in WMATA's June 19th letter?

5. Were there other alleged nonconformities that the Agency found in Schindler's proposal that were not identified? If yes, why did WMATA not raise those concerns?

6. Was a competitive range created? If yes, what standards were established for determining that competitive range?

*Id*. at 1-2.

52.     Schindler requested that the debriefing occur as soon as possible so that it would have the opportunity to analyze the debriefing's contents prior to considering whether to pursue any rights it might have, including any bid protest. *Id*. at 2.

53.     On August 18, 2020, WMATA responded to Schindler's debriefing request, informing Schindler that the Authority was available at 10:30 am on August 27, 2020 to conduct a telephone debriefing.

54.     Given the timing requirements of WMATA's Procurement Manual at Section 17-3, Schindler timely filed its initial Protest within 14 days of the Notice to preserve its protest rights and reserved all rights, including the right to file any additional and supplemental grounds for protest once the debriefing had occurred, including without limitation, any determinations regarding Schindler's Technical Proposal and Price Proposal.

15

55.     On August 19, 2020, Schindler timely filed its initial Protest. *See* August 19, 2020

Initial Protest, attached hereto as Exhibit 11.[3]

56.     On August 25, 2020, prior to the debriefing, WMATA stated via e-mail to

Schindler that it would "rely" on Schindler's Request for Debriefing letter and the six questions

raised therein for purposes of the debriefing.

57.     Given WMATA's stated reliance to only address the questions posed in the

Request for Debriefing letter, Schindler submitted additional debriefing questions, and further

reserved its right to ask verbal questions at the debriefing.

58.     On August 26, 2020, in advance of the debriefing, Schindler submitted its

additional debriefing questions. *See* Schindler's August 26, 2020 Debriefing Questions, attached

hereto as Exhibit 12.

### *Debriefing*

59.     On August 27, 2020, WMATA opened and began the debriefing telephonically

and presented a PowerPoint presentation responding only to Schindler's additional debriefing

questions, but not the base information that WMATA was required to provide per the PPM.

60.     In the debriefing, WMATA stated that it rated Schindler's Technical Proposal as

"unacceptable" because it purportedly failed to meet the following Solicitation criteria:

        a.   Factor 1—Work Approach and Organization, and

        b.   Factor 3—Key Management Project Personnel Qualifications.

61.     WMATA stated that it rated Schindler's Technical Proposal under Factor 1

"unacceptable" because (a) WMATA perceived Schindler's proposal to include four locations

---

[3] Schindler's initial Protest attaches many of the same exhibits already attached separately to this
Complaint. Therefore, so as to not duplicate the exhibits attached separately hereto, only the
Protest *letter* itself is attached in Exhibit 11.

where more than one escalator was scheduled to be replaced at the same time; and (b) Schindler's proposal stated that, although it could meet the size and clearance pit requirements using an external drive, Schindler *recommended* that the size requirement be modified so that an internal drive could be installed, which would improve maintenance and eliminate the need for structural building changes.

62.     WMATA stated that it rated Schindler Technical Proposal under Factor 3 "unacceptable" because WMATA claimed that Schindler's proposal failed to include (a) a project manager with over five (5) years of experience on major escalator replacement projects and (b) a QC/QA Manager with over five (5) years of experience in the QC/QA field.

63.     In response, during the debriefing, Schindler challenged WMATA's rationale and findings regarding WMATA's determination that Schindler's proposal was "unacceptable" and that it did not conform to the Solicitation requirements.

64.     Schindler explained that WMATA's source selection team either misread Schindler's proposal and June 23, 2020 response submissions, or otherwise mistakenly determined that the proposal was unacceptable and improperly disqualified Schindler.

65.     Among other things, Schindler stated that Schindler's Technical Proposal, as amended by the revised submissions to, and discussions initiated by WMATA, included and addressed all of the requirements in the Solicitation.

66.     With respect to Factor 1—Work Approach, Schindler addressed the Solicitation's concerns about certain identified difficult locations.

67.     Following the conclusion of its discussions with Schindler, during the debriefing call, WMATA identified four locations as purportedly non-compliant because Schindler's proposed bid schedule appeared to suggest the replacement of two entrance or intermediate

17

escalators at the same time at those locations. Those four locations are Tenleytown (intermediate escalators), Tenleytown (West entrance escalators), Rosslyn, and National Airport.

68.     For two locations—Tenleytown (intermediate escalators) and Rosslyn—they were clearly minor clerical numbering errors in the bid proposal schedule.  In fact, none of the other parts of the proposal showed both entrance escalators at Rosslyn or both intermediate escalators at Tenleytown being replaced at the same time at those locations. In other words, putting aside these minor clerical errors, which WMATA did not provide Schindler the opportunity to correct nor were they otherwise identified by WMATA, the entire remainder of Schindler's Technical Proposal clearly showed that Schindler did not intend to replace two escalators simultaneously at those certain locations.

69.     Those minor clerical mistakes could have easily been clarified had WMATA identified them and asked for clarification. WMATA did not request any clarification as to those two locations.

70.     Furthermore, with respect to the other two identified locations—Tenleytown (West entrance escalators) and National Airport—Schindler merely included *recommendations*, not mandates, of alternative replacement options (as requested by WMATA) where it could replace more than one escalator at a time in its proposal to reduce costs, time, and/or overcome other logistical concerns or access limitations.

71.     Similarly, in the debriefing, WMATA criticized Schindler's proposal for purportedly not meeting the pit size requirements. In reality, Schindler stated that it could use an external drive and meet the size requirements, but merely recommended that using an internal drive would be more efficient for maintenance and would only slightly reduce the pit

accessibility size. The selection of this potential alternative was at WMATA's discretion and Schindler could have gone forward with either option.

72.     This pit size recommendation was again in no way a mandate, but only a recommendation, and should not have disqualified Schindler from being considered for award.

73.     Recommendations to improve efficiencies and reduce costs are typically viewed as strengths by agencies, not a basis to effectuate a wholesale exclusion of one or more offerors.

74.     In fact, because this Project is publicly funded by, *inter alia,* FTA, WMATA has an affirmative duty to determine the best value not only for benefit of WMATA and the financing governmental bodies, but also for the benefit of the taxpayers and riders, who ultimately fund such projects. This is also a core tenant of government contracting law.

75.     As it relates to Factor 3, Schindler's proposal undeniably included the requisite years of experience for its proposed project manager and QC/QA manager, especially considering the Schindler June 23, 2020 responses, emails/attachments and revisions to WMATA's June 18, 2020 letter.

76.     To the extent WMATA somehow determined (even if improperly) that Schindler's Proposal did not clearly show how many years of requisite experience the proposed project manager and QC/QA manager had, WMATA should have raised these issues clearly in a clarification letter or when WMATA engaged in discussions with Schindler.

77.     During the debriefing, WMATA's Contracting Officer also conceded that she and WMATA's Technical Evaluation Team, received, reviewed and considered Schindler's June 23, 2020 response to WMATA's June 18 letter, including Schindler's multiple emails, attachments and revisions to its proposal submitted on June 23, 2020.

78.     Because the Contracting Officer reviewed and considered Schindler's revised proposal in response to WMATA's June 18, 2020, the communications between Schindler as initiated by WMATA constituted "discussions" under the definitions provided in the Solicitation and under applicable law. *See* Exhibit 3, § 10-22; Exhibit 4, RFP, Vol. 1, Sec. 00 20 03 at 26.

79.     "Where, in response to an agency question attempting to clarify a proposal's offer of technical data rights, offeror proposes a material revision to its proposal, and agency accepts and proceeds to evaluate the proposal on the basis of the response, agency has engaged in discussions such that it must hold discussions with the other competitive range offeror and allow both offerors to submit best and final offers." *Raytheon Co.,* B-261959, B- 261959.3, 96-1 CPD ¶37 at 7 (Jan. 23, 1996); *see also New Hampshire–Vermont Health Serv*., B-189603, 78–1 CPD ¶202 (March 15, 1978) (if the communications provide an offeror with an opportunity to make a substantive change in its proposal, the communications are discussions, not clarifications); *see Kardex Remstar, LLC*, B-409030, 2014 CPD ¶1 at *3-4 (Jan. 17, 2014) (sustaining a protest where, notwithstanding the agency's characterization of its exchanges with the protester as clarifications, GAO found the agency conducted misleading discussions that failed to identify a deficiency associated with the protester's proposal that rendered the proposal unacceptable, and were therefore unfair and not meaningful).

80.     Additionally, when asked about what strengths and weaknesses WMATA identified in its evaluation of Schindler's Proposal, the Contracting Officer replied only that the other Factors that were deemed "acceptable" were strengths. In actuality, no determination of strengths was made by WMATA in violation of its PPM and the Solicitation.

81.   By definition under the Solicitation, "strengths" are "[e]lements of a proposal that *exceed* the evaluation standards of the Solicitation and provide an identified benefit to the Authority." *See* Exhibit 4, RFP, Vol. 1, Sec. 00 20 03 at 26-27.

82.   Therefore, by the Contracting Officer's own admission, no actual analysis of Schindler's strengths or weaknesses was conducted by the WMATA source selection team.

83.   WMATA violated its own Solicitation and PPM evaluation requirements by failing to conduct an analysis of Schindler's strengths and weaknesses. As no technical trade-off was made, the Authority's finding of non-compliance is patently improper.

84.   After receiving multiple questions from Schindler regarding WMATA's purported rationale in determining that Schindler's proposal did not conform to the Solicitation requirements during the debriefing, the Contracting Officer stated that she would (a) have to review again the grounds and bases for WMATA's determination that Schindler's technical proposal was non-compliant and (b) that the debriefing was not closed and would not be concluded until she stated so via e-mail.

85.   To aide WMATA's Contracting Officer and further explain the reasons why WMATA's determination was improper and not supported by the information in Schindler's Proposal, Schindler submitted a Debriefing Follow-Up Letter on August 28, 2020. That letter became the basis for Schindler's Supplemental Protest.  *See infra,* at Para. 87.

86.   On August 31, 2020, WMATA concluded the Debriefing via e-mail, maintaining its original erroneous determination that Schindler's proposal was non-compliant. *See* WMATA's August 31, 2020 E-mail Concluding Debriefing and PowerPoint, attached hereto as Exhibit 13.

87.     Schindler learned for the first time new information and adverse WMATA actions that served as additional bases for protesting the Authority's improper determination that Schindler's technical proposal was non-compliant.

88.     Based on the debriefing, and as suspected in the original Protest, the Authority arbitrarily and irrationally determined that Schindler's proposal did not meet the technical requirements of the Solicitation.

89.     The resulting exclusion of Schindler from the competitive range or consideration for award is unfair and improper, irrational and arbitrary and capricious.

90.     On September 11, 2020, Schindler timely submitted its Supplemental Protest. *See* September 11, 2020 Supplemental Protest, attached hereto as Exhibit 14.

*Initial Protest Grounds*

91.     In its initial Protest submitted on August 19, 2020, Schindler stated that WMATA inexplicably and without providing any rationale or justification determined that Schindler's proposal did not meet the technical requirements of the Solicitation and WMATA summarily disqualified or excluded Schindler from the competitive range or consideration for award.

92.     As set forth below, the Authority committed multiple material errors in its evaluation of Schindler's Proposal, materially prejudicing Schindler as a direct result.

93.     First, WMATA unreasonably and irrationally disqualified Schindler for purported non-compliance even though Schindler's proposal complied with the Solicitation in all material respects.

94.     Schindler submitted a fully compliant, detailed technical and price proposal that mirrored the stated requirements of the Solicitation, including all amendments thereto.

95.     Schindler organized its proposal in the manner set forth in the Solicitation and it fully addressed each and every evaluation factor set out under the instructions for submission of its technical proposal.

96.     The Authority has provided Schindler no specific bases in its Notice for determining that Schindler's Technical Proposal did not comply with the Solicitation's requirements.

97.     Second, the Authority engaged in discussions, but failed to conduct meaningful discussions by communicating with all offerors and identifying all perceived material weaknesses or deficiencies in Schindler's Proposal.

98.     The Authority initiated discussions and requested Schindler to provide responses and explanations for specific aspects of Schindler's proposal after its submission.

99.     Schindler timely and fully responded to these requests and discussion points, providing detailed answers in a cover letter as well as providing the additional documentation requested or revisions desired by WMATA.

100.     These discussion responses fully addressed WMATA's detailed and substantive inquiries on Schindler's proposal at the request and behest of WMATA.

101.     More critically, the Authority requested no further information from Schindler following its response nor did WMATA identify any other concerns, weaknesses or problems with Schindler's proposal, making it evident that Schindler had fully resolved all identified concerns.

102.     If the Authority deemed Schindler's response to each request for clarification or discussion inadequate or incomplete, it should have so notified Schindler and/or requested additional information from Schindler or engaged in further discussions to allow Schindler a meaningful opportunity to cure any perceived deficiencies. This did not happen.

103.     Schindler was prejudiced by the Authority's failures to follow up or engage in discussions that would have allowed Schindler to cure any perceived defects and to remain in the competitive range or consideration for award, in turn, giving WMATA further competition.

104.     Third, the Authority failed to adequately document its determination to exclude Schindler from the competitive range or award consideration.

105.     For example, the Authority's August 5, 2020 Notice to Schindler stated only that WMATA had determined that Schindler's proposal purportedly did not comply with the requirements of the Solicitation. The Authority provided no specific reasons or findings for its determination.

106.     As noted above, Schindler has thoroughly reviewed its technical proposal to confirm and reconfirm that it complies with the requirements in all material respects.

107.    The Authority's determination to disqualify Schindler lacks any rational basis.

108.    In sum, based on Schindler's knowledge at the time before the debriefing, Schindler raised the following protest grounds demonstrating that the Authority acted improperly by, *inter alia*:

   a.   Failing to reasonably and properly evaluate Schindler's Technical Proposal in accordance with the stated Solicitation requirements and definitions;

   b.   Failing to engage in meaningful discussions to allow Schindler to cure any perceived deficiencies in its proposal;

   c.   Failing to adequately document the evaluation; and

   d.   Failing to timely debrief Schindler of the specific bases for its flawed determination.

109.    Schindler's initial Protest demonstrated that the Authority's unreasonable and irrational errors materially prejudiced Schindler because, but for those errors, Schindler's proposal would have been found to be responsive, resulting in its proposal being considered in the competitive range, and for award.

110.    Accordingly, Schindler requested in its Protest that the Contracting Officer issue a ruling on the Protest and, at a minimum suspend the evaluation of all bids or proposals pending resolution of the protest and in the interim meet with Schindler to review the issue(s) raised in the protest; and either (a) direct an award to Schindler and/or (b) cancel any present award to the other offerors and re-conduct a full and proper evaluation and/or other appropriate corrective action sought herein; as well as (c) award Schindler its attorney's fees and protest-related costs.

111.    It is important to note that for purposes of the Protest (and this appeal), Schindler cites and references pertinent court, General Accountability Office ("GAO"), and/or Authority decisions which are relied upon in support of the Protest, pursuant to PPM 17-2(b) which provides that GAO and Federal Decisions are influential.

112.     WMATA's PPM § 17-2(b) states that " [t]he protest should also reference any pertinent court, General Accountability ("GAO"), and/or Authority decisions which are relied upon in support of the protest, as well as any contrary decision(s). *See* Exhibit 3, § 17-2(b).

### *Supplemental Protest Grounds*

113.     In its Supplemental Protest, timely submitted on September 11, 2020, based on the additional information learned in the debriefing, Schindler further stated and expanded on the grounds in which WMATA's determination to exclude Schindler from consideration for award was improper, irrational, arbitrary and capricious and in violation of applicable laws, regulations and Solicitation requirements.

114.     As set forth below, the Authority committed multiple material errors in its evaluation of Schindler's Proposal, materially prejudicing Schindler as a direct result.

115.     First, regardless of WMATA's self-characterization of its exchanges with Schindler as "clarifications," WMATA did in fact and by definition conduct and engage in "discussions."

116.     Those discussions by WMATA were misleading and failed to identify all deficiencies and/or weaknesses that WMATA improperly associated or perceived with Schindler's technical proposal; and which act as WMATA's basis for rendering the proposal unacceptable.

117.     Those discussions were misleading and incomplete. For example, WMATA failed to identify the requests as inquiries regarding areas that were non-compliant or deficient, but instead disguised those requests as inquiries for additional explanation. In fact, WMATA actually led Schindler to believe that any potential issues and concerns had been adequately and fully identified by WMATA and addressed by Schindler.

118.    While WMATA characterized its June 18, 2020 letter as a "clarification" letter, WMATA's Contracting Officer admitted in the debriefing that she and the technical evaluation team received, reviewed and fully considered Schindler's detailed answers, revisions, and additional supplemental submissions in response to WMATA's June 18th letter in its evaluation of Schindler's proposal.

119.    Thus, as defined by WMATA's procurement manual, WMATA did engage in discussions with Schindler.

120.    Despite engaging in discussions, WMATA failed to conduct *meaningful* discussions with all other offerors.

121.    More critically, WMATA failed to identify all perceived weaknesses or deficiencies that would apparently render Schindler's technical proposal non-compliant.

122.    Because WMATA failed to identify all perceived weaknesses and deficiencies (and actually led Schindler to believe that any potential issues and concerns had been adequately and fully identified by WMATA and addressed by Schindler), those discussions were unfair and not meaningful.

123.    Second, WMATA failed to evaluate and identify strengths, weaknesses, and deficiencies in Schindler's proposal, violating both the Procurement Procedures Manual at §§ 12-6(c), 12-17(b), 12-26(b) and the identified evaluation procedures set forth in the Solicitation, Volume 1, at Sec. 00 20 03(A)(2) and (3)(e).

124.    WMATA also failed to communicate any identified strengths, weaknesses and deficiencies to Schindler pursuant to Division 00 Section 00 23 03(A)(2)—Technical Proposal Evaluation Procedures of the stated Solicitation requirements.

125.     In fact, when asked in the debriefing to identify Schindler's strengths and weaknesses of its technical proposal, the Contracting Officer could not identify even a single strength or weakness, other than to merely state that Schindler satisfied the past performance requirements.

126.     Merely meeting the Solicitation requirements is not a "strength."

127.     WMATA clearly did not do any sort of identification or analysis of strengths or weaknesses, nor did WMATA allow Schindler to participate in a presentation, which was optional at the agency's election.

128.     Failure to perform this analysis and identify these attributes is a deviation from the stated evaluation criteria.

129.     Additionally, in failing to conduct its evaluation in accordance with the stated evaluation criteria and Solicitation requirements, the Authority failed to adequately document its determination for excluding Schindler from the competitive range or award consideration.

130.     Third, contrary to WMATA's findings, Schindler's proposal complied with the Solicitation in all material respects, including Factor 1-Work Approach and Factor 3-Organization, Key Management and Project Personnel Qualification.

131.     In particular, Schindler's technical proposal, as amended by the WMATA-initiated discussions, included and addressed all of the Solicitation's requests and specifications requiring offerors to show how to deal with certain WMATA-identified/requested difficult escalator locations.

132.     Again, Schindler merely included recommendations (not mandates) of places where it could replace more than one escalator at a time in its proposal to reduce costs, time, and/or overcome logistics/access limitations and impacts.

133.    Furthermore, to the extent that WMATA now (post-discussions) claims that the bid schedule showed two entrance or intermediate escalators being replaced at the same time, those numbering references in the bid schedule were clearly clerical errors. None of the other parts of the proposal showed both entrance or intermediate escalators being replaced at the same time at certain locations, making it evident when read as a whole, particularly with Schindler's discussions responses, that Schindler would do the work one escalator at a time, but recommended in these limited locations doing more than one at a time due to the existing complexities at those units.

134.    These were minor clerical mistakes that could have easily been clarified had WMATA identified them and asked for clarification. WMATA failed to do so, creating an apparent weakness or concern where none existed and which was not brought to Schindler's attention.

135.    If anything, the Solicitation contained a latent ambiguity in that it asked for proposed solutions to these complicated locations, yet when Schindler made the suggestions for addressing them, it was found to be non-compliant, when it should have received strengths for its proposed solutions. Such a latent ambiguity is to be construed against the drafter, here WMATA.

136.    Schindler also stated that it could meet the pit size requirements by using an external drive, but recommended the option of using an internal drive which would be more efficient for maintenance, but would slightly reduce the pit accessibility size. Again, these were in no way mandated under Schindler's proposal, but instead merely constituted recommendations that Schindler included in an effort to benefit WMATA and ultimately the taxpayers/financing governmental bodies. Moreover, these recommendations were permitted under the Amendments to the Solicitation and WMATA's responses to the RFIs set forth therein.

137.     As relates to the Organization, Key Management and Project Personnel Qualification factors, Schindler's proposal undeniably included the requisite years of experience for its proposed project manager and QC/QA manager, especially given that WMATA received and considered Schindler's responses, emails/attachments and revisions to WMATA's June 18, 2020 letter, as explicitly stated in the debriefing, which information fully clarified this perceived concern.

138.     To the extent WMATA believed that Schindler failed to address or resolve an issue, it had an affirmative duty to bring those items accurately and fully to Schindler's attention and afford Schindler the opportunity to respond in full.

139.     Therefore, to the extent any concerns, weaknesses or deficiencies remained after receipt of Schindler's response or were not identified, WMATA should have raised those concerns or further discussed those issues, and any perceived incomplete response, if any, arose exclusively from WMATA's misleading, incomplete or inaccurate questions and inquiries.

140.     WMATA failed to accurately and fully raise those concerns in its letter, and, rather, gave Schindler the opposite impression—that it had adequately addressed each item raised by the Authority.

141.     Fourth, upon information and belief, only one offer made it through to the so-called "competitive range," resulting in what is essentially a *de facto* sole source award to Kone, Inc.

142.     WMATA's unreasonable and irrational evaluation of Schindler's Technical Proposal and resulting exclusion of Schindler violated the long-standing principles of full and open competition required under WMATA's Compact and PPM, and other applicable statutes and regulations.

143.     In sum, based on the additional information learned during the debriefing, Schindler raised the following supplemental protest grounds demonstrating that the Authority acted improperly by, *inter alia*:

    a.   Failing to engage in meaningful discussions to allow Schindler to cure any and all perceived deficiencies or weaknesses in its proposal;

    b.   Failing to conduct any strength and weakness identification or analysis in accordance with the Solicitation and PPM requirements, and failing to adequately document the same;

    c.   Failing to reasonably and properly evaluate Schindler's technical proposal in accordance with the stated Solicitation requirements and definitions; and

    d.   Failing to conduct the procurement using full and open competition consistent with the standards set forth in WMATA's PPM and applicable statutes and regulations, resulting in a *de facto* sole source award to Kone, Inc.

144.     The Authority's errors identified herein and in Schindler's Supplemental Protest materially prejudiced Schindler because, but for those errors, Schindler's proposal would have been found to be responsive, resulting in its proposal being considered in the competitive range, and for award.

145.     Accordingly, Schindler requested in its Supplemental Protest that the Contracting Officer issue a decision sustaining both its initial and supplemental protests and, at a minimum suspend the evaluation of all bids or proposals pending resolution of the protest and in the interim meet with Schindler to review the issue(s) raised in the protest; and either (a) direct an award to Schindler and/or (b) cancel any present award to the other offerors and re-conduct a full and proper evaluation and/or other appropriate corrective action sought herein; as well as (c) award Schindler its attorney's fees and protest-related costs.

146.     It is important to note that for purposes of the Supplemental Protest, Schindler cites and references pertinent court, General Accountability Office ("GAO"), and/or Authority

decisions which are relied upon in support of the Protest, pursuant to PPM 17-2(b). *See* Exhibit 3, § 17-2(b).

### *WMATA's Denial of Initial and Supplemental Protest*

147.    On October 2, 2020, WMATA issued the Contracting Officer's Final Decision, denying both Schindler's initial Protest and Supplemental Protest. *See* WMATA's October 2, 2020 CO Final Decision ("COFD"), attached hereto as Exhibit 15.

148.    The COFD and denial of Schindler's Protests was improper, irrational, arbitrary and capricious and in violation of applicable laws, regulations and Solicitation requirements. Further, the COFD lacks a rational basis and is summary in nature, providing only brief conclusory statements with little analysis and summary conclusions that are contrary to applicable laws.

149.    The COFD advised that WMATA's procurement decision is governed by WMATA PL 89-774-Section 81 which provides that:

> The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland, Virginia and District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this Title. Any such action initiated in a State or the District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

*Id.* at 7.

150.    The COFD further stated:

> **THIS IS THE CONTRACTING OFFICER'S FINAL DECISION WHICH SHALL BE FINAL AND CONCLUSIVE UNLESS WITHIN THIRTY (30) DAYS THE CONTRACTOR MAILS OR OTHERWISE FURNISHES TO THE CONTRACTING OFFICER A NOTICE OF APPEAL ADDRESSED TO THE AUTHORITY BOARD OF DIRECTORS, INDICATING AN APPEAL IS INTENDED AND REFERENCING THE DECISION AND CONTRACT NUMBER.**

*Id.* (bold in original).

151.    Schindler timely furnished a Notice of Appeal to the Contracting Officer addressed to the Authority Board of Directors, indicating an appeal was intended and referenced the decision and contract number. *See* Notice of Appeal, attached hereto as Exhibit 17.

152.    Schindler herein timely appeals the COFD as irrational and baseless.

### WMATA's Award to Kone, Inc.

153.    On October 14, 2020, WMATA issued its Notice of Award to Kone, Inc. *See* WMATA's October 14, 2020 Notice of Award, attached hereto as Exhibit 16.

154.    Upon information and belief, Kone, Inc. ("Kone") is the previous incumbent contractor for the prior phase of the Project.

155.    Upon information and belief, Kone's proposal does not meet the stated material Solicitation criteria and does not provide the best value for the Project.

156.    Schindler is the offeror that provides the best value to WMATA on this Project.

157.    Upon information and belief, WMATA engaged in *ex parte* discussions with Kone, in violation of WMATA's applicable laws, regulations and procedures.



158.    

159.    

160.

161.    Upon information and belief, WMATA engaged in further bid evaluation with Kone, without engaging in the same and equal discussions with other offerors, including Schindler.

162.    It also appears that WMATA's determination to award Kone the contract was biased and that Kone was given preference in receiving the award in this procurement.

163.    Ultimately, WMATA's entire procurement process was grossly unfair, undermined the intended competitive nature and ideals of the procurement process, and, respectfully, unnecessarily and avoidably wastes the public fisc.

164.    WMATA's unlawful actions are even more absurd given WMATA's recent self-recognition of having significant budget shortfalls. *See* Exhibit 18*,* WMATA Finance and Capital Committee Action Item IV-A, May 14, 2020 at 38 of 82 (findable at

https://www.wmata.com/about/board/meetings/board-pdfs/upload/4A-FY2021-Budget-Revision-Signed-0512.pdf).

165.    As part of its finance committee's key highlights, WMATA states:

> •    The ongoing COVID-19 pandemic has significantly reduced Metro's ridership and revenue which are both expected to be significantly below budget going into FY2021. Schindler requests the Court take judicial notice of this information, which has been openly published to the public.
> •    In light of these pressures, staff propose deferring implementation of previously approved service and fare adjustments for six months, and taking additional management actions.

*Id.*

### Miscellaneous Facts

166.    Schindler has satisfied all prerequisites and conditions precedent to filing this Complaint.

167.    This Complaint is timely filed.

## CAUSES OF ACTION

### COUNT ONE
**(Declaratory Judgment)**

168.    Schindler realleges and incorporates paragraph 1 through 167, inclusive, as if fully set forth herein.

169.    WMATA issued the Solicitation, solicited bids, determined that Schindler's technical proposal was non-compliant with the Solicitation and awarded Kone, Inc. the contract.

170.    In violation of the applicable laws and regulations, as well as WMATA's Compact, PPM and Solicitation, WMATA's conduct, actions and decision to disqualify Schindler from consideration for award and to grant award to Kone, Inc. is unlawful, arbitrary, capricious, irrational and improper, in that WMATA:

> a.   Failed to reasonably and properly evaluate Schindler's Technical Proposal in accordance with the stated Solicitation requirements and definitions;
>
> b.   Failed to engage in meaningful, full and equal discussions to allow Schindler to cure any and all perceived deficiencies or weaknesses in its proposal;
>
> c.   Failed to conduct any strength and weakness identification or analysis in accordance with the Solicitation and PPM requirements, and failed to adequately document the same;
>
> d.   Failed to adequately document the evaluation and source selection decision; and
>
> e.   Failed to conduct the procurement using full and open competition consistent with the standards set forth in WMATA's PPM and applicable statutes and regulations, resulting in a *de facto* sole source award to Kone, Inc.

171.    WMATA's chosen course of action is otherwise unlawful, arbitrary, capricious, irrational, and improper in that WMATA chose to proceed with the bid process, as set forth herein, wherein WMATA failed to provide for full and open competition; violated applicable laws and procedures; conducted an arbitrary and capricious source selection evaluation; made a determination disqualifying Schindler without a rational basis; violated applicable statutes or regulations causing clear prejudice to Schindler; and/or otherwise acted illegally. WMATA's actions further violate applicable law, including the Compact by which it was created, its own Procurement Procedures Manual, and Federal Transit Administration Regulations; and its actions are otherwise unauthorized, unlawful and void.

172.    An actionable and justiciable controversy exists between and among Schindler and WMATA concerning the proper contract award in the procurement at issue; the parties' respective rights and interests in the procurement and contract award for the Project; the construction, import, and application of various documents, submissions, and communications between the parties, and other matters described in this Complaint.

173.    This Court is authorized to resolve the underlying controversy and to determine the rights of the parties. Declaratory relief is necessary to resolve the underlying issues and disputes and preserve the parties' respective rights.

174.    The adjudication of these issues and disputes will serve a useful purpose—to clarify the legal interests and rights between the parties, and to terminate or afford relief from the uncertainty, insecurity and controversy concerning the matters described in this Complaint.

WHEREFORE, Plaintiff Schindler Elevator Corporation respectfully requests that this Court enter judgment in its favor and against Defendant Washington Metropolitan Area Transit Authority and to:

a.  Adjudicate and declare that during the bid process pursued by WMATA, WMATA violated applicable laws and procedures, including its own Solicitation requirements, Procurement Procedures Manual and Compact;

b.  Direct WMATA to cancel the award to Kone, Inc. and make an award to Schindler, and/or direct WMATA to cancel the award to Kone, Inc. and re-conduct a full and proper evaluation or other appropriate corrective action sought herein;

c.  Award Schindler its attorneys' fees and costs related to this action and its protests; and

d.  Award such other and further relief as justice may require.

### COUNT TWO
**(Specific Performance)**

175.    Schindler realleges and incorporates paragraph 1 through 174, inclusive, as if fully set forth herein.

176.    WMATA issued the Solicitation, solicited bids, improperly or irrationally determined that Schindler's technical proposal was non-compliant with the Solicitation and awarded Kone, Inc. the contract.

177.    In violation of the applicable laws and regulations, as well as WMATA's Compact, PPM and Solicitation, WMATA's conduct, actions and decision to disqualify Schindler from consideration for award and to grant award to Kone, Inc. is unlawful in that WMATA:

a.  Failed to reasonably and properly evaluate Schindler's Technical Proposal in accordance with the stated Solicitation requirements and definitions;

b.  Failed to engage in meaningful discussions to allow Schindler to cure any and all perceived deficiencies or weaknesses in its proposal;

c.  Failed to conduct any strength and weakness identification or analysis in accordance with the Solicitation and PPM requirements, and failed to adequately document the same;

d.  Failed to adequately document the evaluation and source selection decision; and

e.  Failed to conduct the procurement using full and open competition consistent with the standards set forth in WMATA's PPM and applicable statutes and regulations, resulting in a *de facto* sole source award to Kone, Inc.

178.   WMATA improperly, irrationally and unlawfully determined that Schindler's technical proposal did not conform to the requirements of the Solicitation, refused to consider Schindler for award and awarded the contract to Kone, Inc.

179.   Schindler will suffer irreparable harm if WMATA continues to pursue its award to Kone, Inc. and allow Kone, Inc. to begin performance under the contract.

180.   There is no alternative adequate remedy at law available to Schindler with respect to its rights in this procurement.

181.   Schindler is entitled to specific performance, to receive award or in the very least entitled to a re-evaluation of the proposals where WMATA conducts meaningful discussions in accordance with the applicable laws, regulations and procurement procedures, and/or to obtain the options and other rights as alleged in the alternative in this lawsuit.

WHEREFORE, Plaintiff Schindler Elevator Corporation respectfully requests this Court enter judgment in its favor and against Defendant Washington Metropolitan Area Transit Authority and to:

a. Enter an Order directing specific performance by WMATA to cancel the award to Kone, Inc. and make an award to Schindler, and/or alternatively for WMATA to cancel the award to Kone, Inc. and re-conduct a full and proper evaluation or other appropriate corrective action sought herein;

b. In the alternative, enter an Order directing specific performance by WMATA to cancel and terminate its bid process, in the entirety;

c. Award Schindler its attorneys' fees and costs related to this action and its protests; and

d. Award such other and further relief as justice may require.

## COUNT THREE
### (Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction)

182.    Schindler realleges and incorporates paragraph 1 through 181, inclusive, as if fully set forth herein.

183.    By virtue of the continuing improper, illegal and arbitrary actions of WMATA as set forth herein, Schindler has suffered and will continue to suffer irreparable harm to which there is no adequate remedy at law available to Schindler with respect to its interests and rights in this procurement and bid process if WMATA is permitted to move forward with the award to Kone, Inc. and Kone, Inc. is permitted to begin performance of the contract.

184.    Such irreparable harm will occur as a result of, among other things, the actions of WMATA in failing to consider Schindler's entire proposal, failing to conduct full, equal and

meaningful discussions, failing to conduct an analysis of all of Schindler's strengths and weaknesses, failing to conduct a full and open competitive procurement process, failing to adequately document its evaluation and source selection decision, failing to consider Schindler's proposal for award and failing to award Schindler. This is all the more the case where, as here, it appears WMATA has fabricated a *de facto* sole source procurement situation by excluding all offerors, including Schindler, with the sole expectation of its awardee, Kone.

185.    There is substantial likelihood that Schindler will prevail on its claims in this lawsuit, the balance of the respective harm to WMATA from injunctive relief favors Schindler, and the public interest favors injunctive relief.

186.    Schindler has no adequate remedy at law nor a pecuniary remedy, due to the nature of the rights, interests, and claims involved in this case, and since the damages caused by WMATA are difficult or impossible to ascertain fully and, if WMATA continues its actions, further irreparable injury will result to Schindler.

WHEREFORE, Plaintiff Schindler Elevator Corporation respectfully requests this Court enter judgment in its favor and against Defendant Washington Metropolitan Area Transit Authority and to:

      a.  Enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting WMATA from taking any further action in moving forward with award to Kone, Inc. or the performance by Kone, Inc. on the Project, and/or from taking any other action that may impact Schindler's rights, interests and claims;

      b.  Enter a permanent injunction directing WMATA to comply with Schindler's rights and interests;

c.   Award Schindler its attorneys' fees and costs related to this action and its protests; and

d.   Award such other and further relief as justice may require.

### COUNT FOUR
**(WMATA Breached its Compact by Failing to Follow its Own Policies, Procedures, Rules, Regulations and Solicitation Requirements Governing the Procurement)**

187.   Schindler realleges and incorporates paragraph 1 through 186, inclusive, as if fully set forth herein.

188.   WMATA's own PPM at §10-1 *et seq.* prescribes the procedures for the solicitation of competitive proposals, and the evaluation, selection and award of a contract based on competitive proposals. *See* Exhibit 3, § 10-1.

189.   The PPM, as well as WMATA's Compact, also sets forth the requirements for conducting a competitive procurement with full and open competition.

190.   The Solicitation sets forth the specific requirements for conducting the evaluation and source selection decision, as described herein.

191.   WMATA issued the Solicitation, solicited bids, determined that Schindler's technical proposal was non-compliant with the Solicitation and awarded Kone, Inc. the contract.

192.   In violation of the applicable laws and regulations, as well as WMATA's Compact, PPM and Solicitation, WMATA's conduct, actions and decision to disqualify Schindler from consideration for award and to grant award to Kone, Inc. is unlawful in that WMATA:

a.   Failed to reasonably and properly evaluate Schindler's Technical Proposal in accordance with the stated Solicitation requirements and definitions;

    b.   Failed to engage in meaningful discussions to allow Schindler to cure any and all perceived deficiencies or weaknesses in its proposal;

    c.   Failed to conduct any strength and weakness identification or analysis in accordance with the Solicitation and PPM requirements, and failed to adequately document the same;

    d.   Failed to adequately document the evaluation and source selection decision; and

    e.   Failed to conduct the procurement using full and open competition consistent with the standards set forth in WMATA's PPM and applicable statutes and regulations, resulting in a *de facto* sole source award to Kone, Inc.

193.    WMATA improperly and unlawfully determined that Schindler's technical proposal did not conform to the requirements of the Solicitation, refused to consider Schindler for award, and awarded the contract to Kone, Inc.

194.    Such decisions and determinations were (and are) irrational, arbitrary and capricious, an abuse of discretion, and/or not in accordance with the law, procedures, and Solicitation requirements governing this procurement.

195.    Therefore, WMATA has breached the provisions of its own Compact, PPM and Solicitation governing this competitive procurement and bid process.

WHEREFORE, Plaintiff Schindler Elevator Corporation respectfully requests this Court enter judgment in its favor and against Defendant Washington Metropolitan Area Transit Authority and to:

    a.   Cancel the award to Kone, Inc.;

    b.   Enjoin WMATA from entering into a contract with Kone, Inc.;

c. Remand this matter to WMATA to either make an award to Schindler or alternatively to re-conduct a full and proper evaluation or other appropriate corrective action sought herein in accordance with the applicable laws and procedures;

d. In the alternative, remand this matter to WMATA to cancel and terminate its bid process in the entirety;

e. Award Schindler its attorneys' fees and costs related to this action and its protests; and

f. Award such other and further relief as justice may require.

## REQUEST FOR PROTECTIVE ORDER

196. Schindler hereby requests that this case be subject to a protective order given the nature of the allegations herein, the trade secret and competition-sensitive nature of the information contained herein and in certain exhibits hereto, and the heightened risk of competitive harm and prejudice.

Dated: October 30, 2020

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   /s/ Lawrence M. Prosen
Lawrence M. Prosen (DC Bar # 457703)
Benjamin L. Williams (DC Bar # 1020622)
607 14th Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 481-9940
Fax: (202) 508-5858
LProsen@kilpatricktownsend.com
BLWilliams@kilpatricktownsend.com

*Attorneys for Plaintiff Schindler Elevator Corporation*

Of Counsel:

Caitlin E. Trevillyan (DC Bar # 888155614)
(Attorney Application for Admission Forthcoming)
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 481-9940
Fax: (202) 508-5858
CTrevillyan@kilpatricktownsend.com

## JURY DEMAND

Plaintiff, Schindler Elevator Corporation, respectfully demands a jury trial on claims so triable herein.

Dated: October 30, 2020

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:  /s/ Lawrence M. Prosen
Lawrence M. Prosen (DC Bar # 457703)
Benjamin L. Williams (DC Bar # 1020622)
607 14th Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 481-9940
Fax: (202) 508-5858
LProsen@kilpatricktownsend.com
BLWilliams@kilpatricktownsend.com

*Attorneys for Plaintiff Schindler Elevator Corporation*