## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SCHINDLER ELEVATOR CORPORATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3157 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| WASHINGTON METROPOLITAN AREA | : | | |
| TRANSIT AUTHORITY, | : | | |
| | : | | |
| Defendant, | : | | |
| and | : | | |
| | : | | |
| KONE, INC., | : | | |
| | : | | |
| Intervenor-Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND *SUA SPONTE* DISMISSING

### FOR LACK OF JURISDICTION

## I. INTRODUCTION

This case involves Plaintiff Schindler Elevator Corporation's ("Schindler") challenge to

Defendant Washington Metropolitan Area Transit Authority's ("WMATA") award of contracts

to replace and install new escalators throughout WMATA's metro rail and transit station system.

WMATA recently awarded these contracts to KONE, Inc. ("Kone"), an Intervenor-Defendant in

this case.  Schindler alleges that it was improperly disqualified by WMATA from the bidding

process for having a non-compliant technical proposal, in purported violation of the terms of

WMATA's Compact, its Procurement Procedures Manual ("PPM") and the terms of its Request

for Proposals ("RFP") governing the contract.  Schindler also alleges that Kone's proposal fails

to meet the RFP criteria and does not provide the best value of the project.  Alongside its

Complaint, ECF No. 1, Schindler filed a motion for a temporary restraining order and preliminary injunction, *see* Pl.'s Mot. Prelim. Inj. ("Pl.'s Mot."), ECF No. 4.  WMATA and KONE oppose the motion.  *See* Def.'s Opp'n Prelim. Inj. ("Def.'s Opp'n"), ECF No. 15, Int.'s Opp'n Prelim. Inj. (Int.'s Opp'n), ECF No. 17.  Oral argument on the issue was held on December 10.  Having considered the parties' briefing and oral arguments, the Court denies Schindler's motion for preliminary injunction, as it finds it does not have jurisdiction to adjudicate this dispute.  Lacking jurisdiction, this Court *sua sponte* dismisses the case.

## II.  FACTUAL BACKGROUND

### A.  Origins of WMATA

On November 6, 1966, Congress created WMATA by approving an interstate compact ("the WMATA Compact") between the Commonwealth of Virginia and the State of Maryland to which the District of Columbia was also a signatory."  *Dant v. District of Columbia*, 829 F.2d 69, 71 (D.C. Cir. 1987) (citing Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966), amended by Pub.L. No. 94–306).  The purpose of WMATA was, and continues to be, to operate a system of Metrorail trains and buses connecting points along Virginia, Maryland, and Washington, D.C.  *Id.*

### B.  WMATA's Request for Proposals

WMATA announced the RFP at issue on January 30, 2020.  Compl. ¶ 20.  The RFP sought proposals from interested vendors "to furnish new escalators" including the "removal, manufacture and installation" of new escalators within the WMATA Metro Rail System.  *Id.* ¶ 21.  The RFP would award a fixed price contract to the offeror who provided the best value, to be judged "by an integrated assessment of the evaluation criteria to be most advantageous to

[WMATA] based on technical merit and price." *Id.* ¶ 22.  To that end, the RFP provided five

Technical Evaluation factors under which each submitted proposal would be evaluated.  *Id.* ¶ 34.

Schindler is "one of the leading global manufacturers and services providers of elevators,

escalators, and moving walks," and has been selected to perform at least four recent escalator

contracts with WMATA.  *Id.* ¶¶ 16, 18.  Schindler submitted its proposal to WMATA for the

RFP at issue on May 6, 2020.  *Id.* ¶ 35.  A little over a month later, on June 18, 2020, WMATA

sent a letter to Schindler requesting that they clarify certain information and provide additional

documentation by answering eighteen questions.  *Id.* ¶ 37–38.  Schindler submitted the requested

supplementary response on June 23, 2020.  *Id.* ¶ 42.  On August 5, 2020, WMATA notified

Schindler that their technical proposal failed to conform to the requirements of the RFP and

would not be considered for an award.  *Id.* ¶ 45.

Schindler quickly took action to challenge their disqualification.  On August 19, 2020,

Schindler filed its initial protest, arguing that WMATA "committed multiple material errors" in

evaluating Schindler's Proposal, namely wrongly disqualifying Schindler for "purported non-

compliance" when its proposal was in compliance "in all material respects."  *Id.* ¶ 50.  Schindler

met with WMATA for a "debrief" on August 27, 2020 via telephone.  *Id.* ¶ 59.  During the

debrief, WMATA explained that Schindler's Technical Proposal was unacceptable because,

contrary to the proposal requirements, (1) it "included four locations where more than one

escalator was scheduled to be replaced at the same time," *id.* ¶ 61, (2) Schindler "recommended

WMATA's size requirements be modified for an internal drive to be installed, *id.,* and (3) key

personnel did not have the required qualifications.  *Id.*  ¶ 62.  Regarding the first factor,

Schindler contends that two of the locations identified were the result of "minor clerical

numbering errors in the bid proposal schedule," while the other locations were merely

"recommendations." *Id.* ¶ 68, 70.  Schindler also alleges that their proposal "undeniably included the requisite years of experience" for the key personnel in question.  *Id.* ¶ 75.

During the debrief, when WMATA's contracting officer was asked about the strengths and weaknesses WMATA identified in Schindler's Proposal, as required by the RFP and PPM evaluation requirements, she represented that "no determination of strengths was made." *Id*. ¶ 80, 83.  Schindler thus concluded that WMATA "arbitrarily and irrationally determined that Schindler's proposal did not meet the technical requirements of the [RFP]." *Id.* ¶ 88.  As a result, Schindler submitted a supplemental protest on September 11, 2020 covering these grounds. *Id.* ¶ 113.  On October 2, WMATA denied Schindler's initial and supplemental protest. *Id.* ¶ 147.  WMATA issued its Notice of Award to Kone on October 14, 2020. Schindler alleges that "WMATA determination to award Kone the contract was biased," and that WMATA engaged in *ex parte* discussions with Kone in violation of the applicable procurement regulations. *Id.* ¶ 162, 157.

Schindler subsequently filed this case and now requests preliminary injunctive relief "prohibiting WMATA from taking any further action in moving forward. . . under Solicitation No.: F200064/CDS: New Escalator Replacement Project for [WMATA], and prohibiting any award of Task 1 specifically to K[one]." Pl.'s Mot. at 25.

### III.  LEGAL STANDARD

Federal district courts, as courts of limited jurisdiction, have a *sua sponte* responsibility to ensure that they have jurisdiction to entertain a case. *See Maldonado-Torres v. Mukasey*, 576 F. Supp. 2d 57, 58 (D.D.C. 2008) (citing *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996)).  "[W]ithout jurisdiction, a court lacks power to consider a case at all." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (citing *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  To that end, federal courts are empowered—and indeed, have an obligation— to undertake an independent investigation to assure itself of its own subject-matter jurisdiction.  *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").

A federal court must presume that a cause of action lies outside its limited jurisdiction, with "the burden of establishing the contrary" resting upon the plaintiff.  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994) (citations omitted).   The scope of that jurisdiction is circumscribed by both Article III and statutory limits, and "no action of the parties can confer subject-matter jurisdiction upon a federal court."  *Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982).  And if it is determined that the court does not have subject-matter jurisdiction, it cannot afford plaintiffs any relief—injunctive or otherwise. *See Bhd. of Maint. of Way Employes Div./IBT v. Nat'l R.R. Passenger Corp.,* 217 F. Supp. 3d 249, 256 (D.D.C. 2016) (noting a court "may not . . . 'resolve contested questions of law when its jurisdiction is in doubt'" (omission in original) (quoting *Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 82 (D.D.C. 2013)).  Accordingly, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

The D.C. Circuit has repeatedly held that WMATA, as an interstate compact, is protected by sovereign immunity "because the signatories have successfully conferred their respective sovereign immunities upon it."  *Morris v. Wash. Metro. Area Transit Auth*., 781 F.2d 218, 219– 20 (D.C. Cir. 1986) ("Congress has power to legislate for the District of Columbia and to create an instrumentality that is immune from suit. Maryland and Virginia have immunity under the

eleventh amendment and each can confer that immunity upon instrumentalities of the state.");

*Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020) ("WMATA

enjoys the same immunity from suit as its State signatories").  The result of this conferral is that

"[d]istrict courts lack subject matter jurisdiction to enter judgment against WMATA unless its

limited waiver of immunity applies."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138

(D.C. Cir. 2015); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (noting "[s]overeign

immunity is jurisdictional in nature," with the terms of any sovereign immunity waiver

"defin[ing] th[e] court's jurisdiction to entertain the suit" (citing *United States v. Sherwood*, 312

U.S. 584, 586 (1941))).

## IV.  ANALYSIS

There are two potential sources that could confer upon the Court the necessary

jurisdiction to adjudicate the instant motions before it.  First, the Administrative Procedure Act

("APA"), generally establishes a cause of action and waives sovereign immunity for those

aggrieved by federal agency action.  *See Tex. All. for Home Care Servs. v. Sebelius,* 681 F.3d

402, 408 (D.C. Cir. 2012); *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006).  But this waiver

only applies if WMATA is indeed a federal "agency" as defined in the APA.  *Trudeau*, 456 F.3d

at 187 (noting that the relevant APA provision specifically "refer[s] to a claim against an

'agency' and hence waives immunity only when the defendant falls within that category."); *see*

*also Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984).  As the Court has

previously noted, "whether the APA applies to WMATA procurement decisions appears to be an

open question in this Circuit."  *Acad. Express, LLC v. Wash. Metro. Area Transit Auth.,* No. 20-

cv-1374, 2020 WL 3288390, at *2 (D.D.C. June 18, 2020).

Second, the Court could have jurisdiction if the WMATA Compact sets out a private right of action for bidders who have suffered an injury by or during WMATA's procurement process, and in doing so waive the sovereign immunity conferred on WMATA by Virginia, Maryland, and the District of Columbia.  The Court examines each argument in turn.

### A.  WMATA Is Not an Agency Under the APA

The APA provides judicial review of the action of a federal agency of the United States. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action. . .  is entitled to judicial review thereof.").  Because the provision explicitly "refer[s] to a claim against an 'agency'" it "waives immunity only when the defendant falls within that category."  *Trudeau*, 456 F.3d at 187; *see also Clark,* 750 F.2d at 102 (finding that a plaintiff could "not take advantage of [the APA's] broad waiver of sovereign immunity since the Library of Congress is not an 'agency' as defined under the [APA]").  The relevant question is thus if WMATA is in fact a federal "agency" such that the APA's waiver of sovereign immunity applies.

#### 1.  The Plain Language of the APA and Relevant Precedent
#### Indicate WMATA Is Not a Federal Agency

The APA defines "agency," to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 701(b)(1) (definition for judicial review provisions), *see also id.* § 551(1) (definition for administrative procedure).  The definition also lists several entities that it "does not include," such as Congress, the federal courts, the governments of U.S. territories, and the government of the District of Columbia.  *Id.* §§ 551(1), 701(b)(1).   Interstate compact entities such as WMATA do not make an appearance on this list of omitted entities.  In *Armstrong v. Bush*, the D.C. Circuit held that

this "textual silence, when read against the backdrop of . . . the canons of construction applicable to statutes that implicate the separation of powers" indicates "that Congress did not intend to subject [an entity not included in this list] to the APA."  *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (concluding that the plain language of 5 U.S.C. § 701(b)(1) should be read as implying that the President is not an agency under the APA).  The Second Circuit has used this same analysis to reason that an interstate compact entity similar to WMATA "is not a federal agency within the meaning of the APA."  *New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 531–32 (2d Cir. 2010).  Accordingly, a review of the plain language of the APA indicates that WMATA would not fall within its agency definition.

Indeed, there is a general consensus among the federal courts that have considered this question in the context of similar entities that interstate compacts are *not* federal agencies as defined by the APA.  *See, e.g.,* Daniel E. Andersen, Note, *Straddling the Federal-State Divide: Federal Court Review of Interstate Agency Actions*, 101 Iowa L. Rev. 1601, 1630 (2016) ("Federal courts seem to agree that an interstate compact is not a federal agency as defined by § 701(b)(1) of the APA.").  The key distinction that courts rely on to distinguish interstate compacts from federal agencies is that they are state cooperative agreements as opposed to federal instrumentalities.  *See Old Town Trolley Tours of Wash., Inc. v. Wash. Metro. Area Transit Comm'n*, 129 F.3d 201, 204 (D.C. Cir. 1997) (holding APA inapplicable because "[t]he [Washington Metro Area Transit] Commission is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia"); *Martha's Vineyard/Dukes Cty. Fishermen's Ass'n v. Locke*, 811 F. Supp. 2d 308, 314 (D.D.C. 2011) (determining that an interstate commission's "authority is not federal in nature; it is simply a state cooperative agreement in which the member States have agreed to work in coordination"); *Kerpen v. Metro.*

8

*Wash. Airports Auth.*, 260 F. Supp. 3d 567, 586–87 (E.D. Va. 2017) (holding interstate airport authority was not "subject to the APA" because it was "not a federal instrumentality"), *aff'd*, 907 F.3d 152 (4th Cir. 2018); *see also Saunders v. Wash. Metro. Area Transit Auth.*, 359 F. Supp. 457, 460 (D.D.C. 1973) ("Metro was created by Interstate Compact and is an agency only of its constituent jurisdictions. The Compact was ratified by Congress, as required by the Constitution for all such Compacts and was authorized and approved by Congress on behalf of the District of Columbia as a signatory jurisdiction. But Plaintiff has offered nothing which indicates that Metro thereby became a Federal agency.") (footnotes omitted)), *remanded on other grounds*, 486 F.2d 1315 (D.C. Cir. 1973).

WMATA is unique, of course, compared to the majority of other interstate compacts in that the District of Columbia, a federal territory over which Congress holds ultimate authority, is a party to the WMATA Compact. *See Morris*., 781 F.2d at 222 (recognizing Congress's "particularly active role in creating WMATA" and concluding that "[t]here seems no question that the United States could validly confer its [sovereign] immunity upon WMATA."). But the mere fact that the District of Columbia is party to an interstate compact does not seem sufficient to transform the resulting agreement into a federal agency. Indeed, the D.C. Circuit has held that a similar interstate compact, the Washington Metro Area Transit Commission, which also includes the District of Columbia as a party, could not be an "authority of the Government of the United States" because it was an "authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia." *Old Town Trolley,* 129 F.3d at 204 (quoting 5 U.S.C. § 551(1)). And in its most recent comments on the issue, the D.C. Circuit concluded that WMATA is an "instrumentality and agency of states." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 333 (D.C. Cir. 2018), *cert. denied*, 140 S. Ct. 119 (2020). As

such, the Court is unconvinced that treating WMATA as a federal agency for the purposes of the
APA is appropriate.

Schindler argues otherwise, referencing "[a] number of cases and courts" that it claims
"have found that federal courts have subject matter jurisdiction in WMATA procurement cases."
Pl.'s Reply at 3.  At oral argument, Schindler asserted that the jurisdictional basis for its claim is
that WMATA is a federal agency under the APA.  *See* Hr'g Tr. at 3:2–7.  But the cases it
references are far from definitive on this point of law, and the D.C. Circuit has never addressed
this issue straight-on.  Schindler cites to *Monument*, a decision from this District that states
"WMATA is treated as a federal agency for purposes of standing when a party seeks to challenge
WMATA's procurement decisions in federal court" and that "WMATA's procurement decisions
must be made in accordance with the APA and applicable federal law."  *Monument Realty LLC
v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 76 (D.D.C. 2008).  *Challenger
Transportation*, an opinion from the District of Maryland, holds the same.  *See Challenger
Transp. Inc. v. Wash. Metro. Area Transit Auth.,* No. 14-cv-3322, 2015 WL 4608060, at *4–5
(D. Md. July 30, 2015) (relying largely on *Monument* to hold that, "[c]ourts have treated
WMATA as a federal agency when a party seeks to challenge WMATA's procurement decisions
in federal court").  However, in reaching this conclusion *Monument* relied heavily on *Elcon*, a
D.C. Circuit decision that did not actually decide the issue.  The court there assumed, without
deciding, that WMATA was a federal agency and therefore its "procurement decisions must be
reached in accordance with the APA."  *Elcon Enter., Inc. v. Wash. Metro. Area Transit Auth*, 977
F.2d 1472, 1480 (D.C. Cir. 1992) (noting it was "unnecessary to resolve the issue" in the context
of that opinion).  The court also took care to emphasize that "if the APA does not apply, there is
a serious question whether [the plaintiff] has a federal cause of action for judicial review of

WMATA's procurement decisions." *Id.* at 1479 n.2.  Consequently, *Elcon* and its progeny provide little in the way of persuasive support for Schindler's position that WMATA is a federal agency for the purposes of the APA.

The rest of the cases Schindler puts forth do little to rectify this shaky legal foundation. Schindler also cites to a pair of district court decisions from the 1970s that allowed plaintiffs aggrieved by a procurement decision to bring an action against WMATA.  *See Bootery, Inc. v. Wash. Metro. Area Transit Auth.,* 326 F. Supp. 794 (D.D.C. 1971), *Otis Elevator Co. v. Wash. Metro. Area Transit Auth.,* 432 F. Supp. 1089 (D.D.C. 1976).  But neither decision even mentions the APA or engages in any type of substantive analysis regarding if WMATA is a federal agency—instead the short paragraph in *Bootery* addressing this issue focuses on standing, asserting that "[i]n view of the federal interest in the Compact, there appears no reason why the general criteria for standing to challenge an action under a federal statute should not be employed" and that the case could proceed because "there is no clear and convincing indication of a legislative intent to withhold judicial review." *Bootery*, 326 F. Supp. at 799); *see also Otis Elevator,* 432 F. Supp. at 1093–94 (adopting the rationale of *Bootery* with no further discussion). And the final case cited by Schindler, *Seal,* directly undermines the argument that the APA can provide a foothold for subject-matter jurisdiction.  In *Seal*, the Eastern District of Virginia court concluded that "WMATA[ ] is not a federal agency[; r]ather, it is 'an instrumentality and agency of each of the signatory parties'" and consequently, "it is not subject to the APA." *Seal & Co. v. Wash. Metro. Area Transit Auth*, 768 F. Supp. 1150, 1156–57 (E.D. Va. 1991) (citation omitted) (determining under alternate theory that the suit could proceed due to WMATA's "quasi-federal agency" nature).  The Court does not understand any of these cases to support Schindler's primary argument that WMATA is a federal agency under the APA.

For all of these reasons—the statutory interpretation of the scope of the APA's "agency" definition, the general consensus among courts that interstate compacts fall outside these bounds, and the lack of persuasive case law to the contrary—the Court finds that WMATA is not a federal agency, meaning Schindler cannot proceed under the cause of action the APA describes.

### 2.  The Quasi-Federal Agency Doctrine Is Not Persuasive

While not invoked explicitly by Schindler, several of the cases it cites—*Seal*, *Otis Elevator*, and *Bootery*—rest in part on the "quasi-federal agency" doctrine.  This doctrine holds that even where the APA is not applicable, when the entity in question "performs tasks like those that a federal agency would perform, it should be subject to similar legal restrictions on the way those actions are taken."  Jacob E. Gersen, Foreward, *Administrative Law's Shadow*, 88 Geo. Wash. L. Rev. 1071, 1087 (2020).  The court in *Seal* provides the most insight into the doctrine's applicability to WMATA, reasoning that it was Congress's intent that "WMATA be subject to APA-like review of its procurement activities."  *Seal*, 768 F. Supp. at 1157.  The court analyzed the language and legislative history of WMATA's procurement regulations along with other factors that the court determined together pointed "collectively and persuasively" to imposing APA-like legal constraints on WMATA.  *Id.*  These factors included that Congress (through the District of Columbia) was a party to the WMATA Compact, that WMATA replaced a federal agency, that large amounts of federal tax dollars funded WMATA at its inception, and that legislators sought to "protect the federal interest" of the Compact.  *Id.* [1]

---

[1] In many ways the "quasi-federal agency" inquiry (at least as conducted by the court in *Seal*) overlaps and folds into the implied cause of action inquiry discussed below, *see infra* section IV.B.2, a fact that the court in *Seal* acknowledged.  *See Seal.*, 768 F. Supp. at 1156 (noting that the same "result is compelled whether WMATA is viewed (1) as a non-federal agency and a private cause of action analysis is employed using . . . techniques of statutory interpretation . . . or (2) as a quasi-federal agency and a zone of interests test is applied")

But as other courts have noted, "[t]he 'quasi-federal agency' doctrine itself is quite

uncertain in our Circuit; indeed, very few cases support its existence." *Martha's Vineyard*, 811

F. Supp. 2d at 314.[2]  More fundamentally, the Court finds the doctrine to be "incompatible with

the modern doctrine that causes of action are created by Congress, *not* federal courts," *id.*, and

also that the doctrine's application "would be in tension with [a] governing Compact, which

serves as a contractual agreement between the member states," *Marine Fisheries Comm'n*, 609

F.3d at 535 (rejecting quasi-federal agency doctrine altogether, noting: "By its nature, there will

always be federal involvement in a congressionally approved interstate compact. We are

unpersuaded, however, that this requires us to subject what is, at its core, a contract between

states to the judicial review provisions of the APA."); *see also United States v. Saunders*, 828

F.3d 198, 205 (4th Cir. 2016) (citing with approval the Second Circuit's rejection of the quasi-

federal agency doctrine).  Because WMATA does not meet the APA's definition of a federal

agency, this Court will not determine by judicial fiat that it is similar enough as a "quasi-federal

agency" for it to be subject to a statutory regime designed to apply only to federal agencies.

Accordingly, Schindler is foreclosed from relying on the APA to provide the requisite subject

matter jurisdiction for it to bring its suit.

## B.  There is No Private Right of Action Under the
## WMATA Compact for Review of Procurement Decisions

Schindler's case cannot proceed unless there is another statutory hook for jurisdiction,

such as under the WMATA Compact itself.  For without a congressionally created cause of

---

[2] The doctrine appears to be largely "the creation of several district courts." *Marine Fisheries Comm'n*, 609 F.3d at 534 n.10.  Only the Eighth Circuit has adopted the doctrine, though it did so in an unpublished decision that rejected the doctrine's application to the entity at issue.  *See Heard Commc'ns, Inc. v. Bi-State Dev. Agency*, 18 F. App'x 438, 440 (8th Cir. 2001) (adopting a three-factor test to determine quasi-agency status based largely on *Seal*).

action that allows for the waiver of WMATA's sovereign immunity, this Court does not have jurisdiction to adjudicate claims against WMATA.  *See Banneker Ventures*, 798 F.3d at 1138.  It is unfortunate that Schindler declined the Court's offer at oral argument to provide additional briefing on this topic on a non-emergency basis, as the parties' briefing on this issue was far from in-depth, despite this Court's specific directive to focus on issues of subject-matter jurisdiction.  *See* Min. Order (November 12, 2020).  But as the Court is obligated to conduct an independent inquiry into its own jurisdiction, *see Arbaugh*, 546 U.S. at 514, it will proceed by examining the WMATA Compact to determine if Congress created a private right of action to obtain judicial review of WMATA's procurement decisions.

### 1.  There is No Express Cause of Action

Schindler argues that the "plain language of WMATA's own PPM and Compact" "expressly provide for judicial review of protest decisions."  Pl.'s Reply at 3–4.  The Court finds both purported sources of jurisdiction to be unavailing.

Schindler makes much of the fact that the PPM governing this contract "explicitly states that '[t]he United States District Courts for the Districts of Maryland, Virginia and the District of Columbia, and the local courts in Maryland, Virginia and the District of Columbia have jurisdiction over court actions concerning protest decisions."  *Id*. (alteration in original) (emphasis omitted).  The Court can quickly dispose of this line of argument, as it is axiomatic that only Congress can create jurisdiction regardless of the consent of any parties to an action.  *See Patchak v. Zinke*, 138 S. Ct. 897, 907 (2018) (noting that "a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power").  As this Court expressed to the parties at oral argument, and to which Schindler agreed, WMATA "cannot confer jurisdiction on

[the Court where] Congress has not." Hr'g Tr. at 9:2–4. Accordingly, the PPM, even if it does reflect WMATA's internal procurement policy, cannot operate as a source of jurisdiction.

Schindler also argues that an express cause of action can be found within the language of the WMATA Compact, identifying the provisions that state that WMATA "may [s]ue or be sued," D.C. Code § 9-1107.01(12)(a) ("Section 12"), and that "[t]he United States district courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia, and the District of Columbia, of all actions brought by or against [WMATA]," *id.* § 9-1107.01 (81) ("Section 81"). This argument fails for two reasons.

First, the Supreme Court has held a statute's jurisdictional provisions—such as Section 81 here— "creates no cause of action of its own force and effect." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979). This is because a cause of action must be grounded "in the substantive provisions of the [statute] which they seek to enforce." *Id.* No cause of action for Schindler can thus be found under Section 81.

Second, the D.C. Circuit addressed a similar argument in a past case, and determined that the jurisdictional grant of Section 81 must be read in conjunction with Section 80 of the WMATA Compact, which limits any waiver of WMATA's sovereign immunity and the federal district courts' jurisdiction to that for contract claims and torts claims committed in the performance of proprietary functions. *Morris*, 781 F. 2d at 221.[3]   Schindler does not dispute

---

[3] Section 80's wavier of immunity provides in full:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent[s] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title

that its claims sound in neither contract nor tort.  The court in *Morris* also rejected an attempt to find a waiver of WMATA's immunity in the "[s]ue and be sued" clause of Section 12 of the Compact, noting that reliance on this clause "would be particularly inappropriate [here] where another section of the Compact, § 80, specifically and expressly delineates the scope of WMATA's consent to be sued."  *Id.* at n.3.  Schindler also has not provided the Court with any citation to any court finding an express cause of action of this nature under the WMATA Compact.  Taken together, the Court can find no express cause of action under the WMATA Compact for procurement protests.

### 2.  There Is No Implied Cause of Action

Schindler also argues that Congress created an implied cause of action in WMATA's Compact that allows for suits alleging procurement regulation violations.  Pl.'s Reply at 8.  In making this argument, Schindler relies almost entirely on *Seal*, an Eastern District of Virginia opinion, to support its claims.  But in the almost thirty years that have expired since *Seal* was decided, the Supreme Court has significantly tightened (if not eliminated altogether) the ability of federal courts to create implied causes of action.  *See e.g., Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 67 n.3 (2001) ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one."); *Klay v. Panetta*, 758 F.3d 369, 373 (D.C. Cir. 2014) (noting the Supreme Court's "shift toward disfavoring judicially implied causes of action").  As a result, the requirements necessary to find an implied cause of action are "a high

---

shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. Code Ann. § 9-1107.01(80).

bar to clear." *See Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1098 (D.C. Cir. 2017). Schindler fails to clear this bar.

In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court "narrowed the set of circumstances under which a statute can be found to create a private right of action." *Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 37 (D.D.C. 2019). The Court in *Sandoval* emphasized that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286–87 ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.") (citation omitted). Consequently, a cause of action can exist only where a court finds there to be congressional intent to create "not just a private right but also a private remedy." *Id* at 286; *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 164 (2008) ("[I]t is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one."). Consequently, the "baseline rule is that a federal statute ordinarily should be read as written, in effect creating a presumption against importing, by implication, a private right of action." *San Juan Cable LLC v. Puerto Rico Tel. Co.*, 612 F.3d 25, 30 (1st Cir. 2010). This requirement is based on the "logical[ assumption] that Congress will be explicit if it intends to create a private cause of action" under a statute. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017); *see also Bauer v. Marmara*, 774 F.3d 1026, 1033 (D.C. Cir. 2014) ("The express inclusion in some statutes of language granting private parties a right to sue certainly suggests that Congress did not intend for such a right to be implied in the absence of express authorization."). [4]

---

[4] As an interstate compact, the WMATA Compact is federal law. *See Marine Fisheries Comm'n*, 609 F.3d at 533 ("[A]n interstate compact or agreement becomes federal law if it is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the

The Court begins its implied cause of action analysis, as it must, with the text of the statute.  The WMATA Compact specifically addresses the types of actions that may be brought under it, with Section 80 of the WMATA Compact waiving sovereign immunity and providing that WMATA "shall be liable for its contracts and for its [proprietary] torts. . ." D.C. Code Ann. § 9-1107.01(80).  Section 73 of the WMATA Compact, which details the various procurement procedures that bind WMATA and under which Schindler hopes to find an implied cause of action, provides no such waiver of sovereign immunity.  *Id.* 9-1107.01(73).  The D.C. Circuit has explained that "the express inclusion in some statutes of language granting private parties a right to sue certainly suggests that Congress did not intend for such a right to be implied in the absence of express authorization."  *Bauer*, 774 F.3d at 1033.  This presumption is even stronger here, where Congress specifically waived WMATA's immunity for those injured by tort or contract with WMATA, but mentioned nothing regarding the class of individuals who could be harmed through the procurement process.

The language of Section 73 of the Compact also shows that finding an implied cause of action based on this provision would be inappropriate.  This section of the Compact simply lists WMATA's obligations "in conducting a procurement of property, services, or construction." D.C. Code Ann. § 9-1107.01(73).  The D.C. Circuit has held that where a statute creates only "agency obligations, but it does not focus on the rights of protected parties . . .  no right of action

---

Constitution.") (citing *NYSA–ILA Vacation & Holiday Fund v. Waterfront Comm'n*, 732 F.2d 292, 297 (2d Cir. 1984); *see also Cuyler v. Adams,* 449 U.S. 433, 438, (1981) ("[T]he consent of Congress transforms the State's agreement into federal law under the Compact Clause.").  The WMATA Compact was "consented to, and enacted for the District of Columbia" by Congress on November 6, 1966, *Morris*, 781 F.2d at 219, and therefore the "WMATA Compact . . . " ha[s] the force and effect of federal law," *McKenna v. Washington Metro. Area Transit Auth.*, 670 F. Supp. 7, 10 (D.D.C. 1986), *aff'd*, 829 F.2d 186 (D.C. Cir. 1987).  Accordingly, congressional intent is the relevant inquiry for this Court to determine if an implied right of action is contained within the WMATA Compact.

can be implied in the Act." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 871 (D.C. Cir. 2014).  Section 73 is such a provision, and accordingly cannot be a source of any implied cause of action for Schindler.

WMATA also brought to the attention of the Court that the Washington Metropolitan Area Transit Commission ("WMATC") Compact that preceded and was amended to form the WMATA Compact, does provide an express cause of action against WMATC for the review of commission decisions.  *See* Def.'s Opp'n at 16 (citing Pub. L. No. 86-794, § 17, 74 Stat. 1031, 1046 (1960) ("Any party . . . aggrieved by an order issued by the Commission . . . may obtain a review of such order in the court of appeals").  Thus, at the time the WMATA Compact was drafted, Congress had enacted statutes that expressly included the type of language Schindler would like the Court to now read in by implication.  But "[a]textual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision."  *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019).  Congress could have easily adopted this judicial review provision from the WMATC Compact, but for whatever reason, it chose not to.  The Court will not second guess this congressional decision by inserting such a provision and creating an implied cause of action where it does not appear within the text. By remaining within the bounds of the congressionally approved text, the Court remains in its proper role of "simply enforc[ing] the value judgments made by Congress."  *Id.*

Against this backdrop, Schindler urges this Court to instead follow the holding of *Seal*, Pl.'s Reply at 8–9, and find based on the language and legislative history of the WMATA Compact an implied cause of action "for bidders to bring private causes of action to enforce the compacts' procurement provisions."  *Seal*, 768 F. Supp. at 1155.  The Court finds that Schindler's request is not possible given the current standards that govern when a court can find an implied

cause of action within a statute.  In the interest of completeness, however, the Court will review the factors the *Seal* court relied on to justify a cause of action to show why such an inference is inappropriate here.

The court in *Seal* relied on the legislative history and language of Section 73 to find a Congressional intent to allow injured parties to challenge WMATA's procurement actions.  *Id.* at 1156.  This conclusion was based on the use in Section 73 of the WMATA Compact of the phrase, "lowest responsible bidder," a "term of art" drawn from federal procurement regulations. *Id.*  The court in *Seal* stated that this "use suggests that Congress intended WMATA to conduct procurements in a fashion similar to federal agencies."  This Court suggests that the single use of one term, that is likely standardized across both federal and state procurement regulations, appears an insufficient foundation on which to rest this conclusion.  The court in *Seal* also found "[m]ore evidence of this Congressional intent" in the legislative history surrounding a 1988 amendment to Section 73.  *Id.*  The House Report accompanying this amendment included an explanation for the change, which included adjusting the dollar limits required to trigger Section 73's requirements to match federal procurement limits.  *Id.*  The House Report also contained testimony by the Urban Mass Transportation Administration's Assistant Chief Counsel that stated, "WMATA's current procurement regulations. . . . follow Federal requirements."  *Id.*  The court's conclusion that "Congress intended WMATA to function as a federal agency with respect to procurements" based on this vague reference made by an individual who was not even a member of Congress seems like too large a logical jump to make.  And it certainly does not support the even more afield inference that Congress intended an implied cause of action for aggrieved bidders on WMATA's procurements.  Further, "when statutory text resolves the issue, as it does here, the Supreme Court has said that we need not dig into the legislative history."

*Johnson*, 849 F.3d at 1098.  This evidence falls short of showing congressional intent to create an implied cause of action under the WMATA Compact. [5]

Schindler also invokes the acquiescence doctrine to argue that because "Congress had multiple opportunities to disapprove of prior opinions by this Court finding WMATA subject to protest claims by disappointed bidders under the APA" when amending the Compact in 1972, 1988, 1996, and 2009, "but chose not to do so," it can be inferred through this silence that Congress acquiesced to this judicial interpretation.  Pl.'s Reply at 9 (citing *Seal*, 768 F. Supp. at 1157).  But the Supreme Court has declared such reasoning to be impermissible, noting that "it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the [courts'] statutory interpretation" and that "Congress may legislate, moreover, only through the passage of a bill . . . Congressional inaction cannot amend a duly enacted statute."  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 186 (1994) (citation omitted).  Consequently, the absence of corrective legislation by Congress cannot be used to support Schindler's contention that a private right of action exists for their claim under the WMATA Compact.

The Court is sympathetic to Schindler's final argument that declining to find jurisdiction for challenges to WMATA's procurement practices could create a situation where there is "no way to monitor or enforce Section 73's mandate that WMATA use competitive procedures to

---

[5] The court in *Seal* also cited a number of "unique" features of WMATA that it posited showed a congressional intent that "WMATA would function like a federal agency with respect to procurements."  *Seal,* 768 F. Supp. at 1156–57.  These factors included that Congress, through its control at the time over the District of Columbia, was a party to the WMATA compact, that WMATA replaced the federal National Capital Transportation Agency, that large amounts of federal tax dollars funded WMATA at its inception, and that legislators sought to "protect the federal interest" of the system.  *Id.*  But these factors, even if indicative that WMATA mirrored federal agencies in some respects, fall far short of demonstrating Congressional intent to create an implied cause of action for aggrieved bidders to bring suit under the WMATA Compact.

award such contracts."  Pl.'s Reply at 9; *see also Seal*, 768 F. Supp. at 1156 (stating cause of

action for bidders is "arguably implicit" given that absent a private right of action, "it is hard to

see how [the WMATA Compact's provisions] would be monitored and enforced").  But the rule

of this Circuit is clear— "[a]bsent statutory intent to create a cause of action . . .'courts may not

create one, no matter how desirable that might be as a policy matter, or how compatible with the

statute.'"  *Int'l Union, Security, Police & Fire Prof'ls of Am. v. Faye*, 828 F.3d 969, 972 (D.C.

Cir. 2016) (quoting *Sandoval*, 532 U.S. at 286); *Johnson*, 849 F.3d at 1098 (noting that "policy

arguments supporting a private cause of action . . . are best addressed to Congress, not the

courts" because "unless and until Congress acts, our hands are tied."); *but see First Pac.*

*Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1126 (9th Cir. 2000) (finding, prior to *Sandoval*, that

where there was no means to enforce a statute's provisions "apart from an implied private right

of action" that it was "appropriate to infer that Congress did not intend to enact unenforceable

requirements" and the court could imply a private right of action).  But as Schindler admitted at

oral argument, pursuant to the RFP it also could have pursued "an optional appeal in this case" to

the Federal Highway Administration.  Hr'g. Tr. 6:10-12.  The availability of this appeal, (which,

apparently, Schindler did not pursue), means that this is not a situation where declining to find an

implied cause of action would result in a situation where parts of the WMATA Compact cannot

be enforced.

Accordingly, in the absence of clear indicia of congressional intent to the contrary, the

Court holds that the WMATA compact does not provide a right of action for aggrieved bidders

on WMATA contracts to sue.  And because jurisdiction is also not available through the APA,

Schindler is therefore not entitled to any relief, let alone the extraordinary remedy of a

preliminary injunction.  The motion for preliminary injunction is denied.  And, thus, because this Court lacks jurisdiction over the matter, the case must be dismissed.

### V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **DENIED** and this case is **DISMISSED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 23, 2020                                                    RUDOLPH CONTRERAS
                                                                                      United States District Judge